# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **CALCON MUTUAL MORTGAGE, LLC,** *Plaintiff* | § § § § | |
| **v.** | § § | **No. 1:24-CV-01582-RP** |
| **SOUTHWEST STAGE FUNDING, LLC,** *Defendant* | § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Southwest Stage Funding, LLC d/b/a Cascade Financial Services's ("SSF") motion to dismiss, Dkt. 17, and all related briefing. After reviewing these filings and the relevant law, the undersigned will recommend that the District Judge grant the motion.

## I.    BACKGROUND

Plaintiff Calcon Mutual Mortgage, LLC ("Calcon") and SSF are lenders specializing in manufactured home loans subject to the Dodd-Frank Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) et seq., the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. § 1026.42. Dkt. 16, at 2. The parties are prohibited under those provisions from influencing appraisers to assign properties a targeted value. *See, e.g.*, 12 C.F.R. § 1026.42.

1

Calcon alleges it previously received some portion of its business from manufactured home retailers Palm Harbor and Titan (the "retailers"), but that those retailers now "prefer that their potential purchasers utilize a lender that will agree to use one appraiser, Freda Maynard." Dkt. 16, at 3. According to Calcon, SSF has agreed to use only Maynard for its appraisals, which is unlawful. *Id.* at 4. Calcon alleges that because of SSF's choice to use Maynard, five specific Palm Harbor or Titan borrowers requested that their applications be transferred from Calcon to SSF. *Id.* at 4, 5.

Based on these facts, Calcon sued SSF in state court for unfair competition and unfair trade practices. Dkt. 1-1. SSF removed to federal court. Dkt. 1. In Calcon's second amended complaint, it asserts one cause of action for tortious interference with business relations. Dkt. 16, at 5-6. SSF moved to dismiss, arguing Calcon fails to state a claim. Dkt. 17.

## II.     LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when

assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338.

## III.    DISCUSSION

To state a claim for tortious interference with business relations, Calcon needed to allege

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*WickFire, LLC v. Woodruff*, 989 F.3d 343, 356 (5th Cir. 2021) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)). The undersigned's analysis begins and ends with Calcon's failure to sufficiently allege SSF's intent.

To demonstrate that the defendant acted with the conscious desire to prevent a business relationship or knew the interference was certain or substantially certain to occur, "[t]he interfering party must know of the existence of a contract between the plaintiff and a third party or have knowledge of facts that would lead a reasonable person to conclude that a contract existed." *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 123 (Tex. App.—El Paso 1997, pet. denied); *see also Tex. Oil Co. v. Tenneco Inc.*, 917 S.W.2d 826, 834 (Tex. App.—Houston [14th Dist.] 1994), *rev'd on other grounds sub nom. Morgan Stanley & Co. v. Tex. Oil Co.*, 958 S.W.2d 178 (Tex. 1997). In contrast, if the interference was an incidental result of conduct that the defendant engaged in for another purpose, the interference may be unintentional. *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001) ("If the actor had no desire to effectuate the interference

by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose, the interference may be found to be not improper." (cleaned up)); *see also Larson v. Fam. Violence & Sexual Assault Prevention Ctr. of S. Tex.*, 64 S.W.3d 506, 517 (Tex. App.—Corpus Christi 2001, pet. denied); *Coinmach*, 417 S.W.3d at 929 (Guzman, J., concurring).

Calcon fails to adequately allege SSF knew about its prospective business relationships. In its complaint, Calcon states only that SSF "intentionally solicited the transfers [of the borrowers' accounts] and was aware that Plaintiff's contracts with the borrowers were pending." Dkt. 16, at 5. This is the kind of "[t]hreadbare recital[]" of an element of a cause of action that does not suffice to state a claim under *Iqbal*. 556 U.S. at 678. Though Calcon provides the borrowers' names, loan amounts, and loan numbers, as well as attaches evidence that SSF *eventually* used Maynard as an appraiser in its contract with one of those borrowers, Calcon fails to make any non-conclusory allegations that SSF had any knowledge of those specific borrowers until they requested transfer of their accounts to SSF. *See id.* at 4-5, 9.

It is not enough that SSF knew generally that Calcon had business relationships with prospective borrowers. In *Texas Oil*, the court concluded there was no evidence of intentional interference where the defendant knew the value of another bid for a contract with a third party at the time it placed its own bid but did not know that the plaintiff made the first bid. 917 S.W.2d at 834. The court concluded that "[a]bsent any knowledge that … there was a reasonable probability of a contract between [the third party] and [the plaintiff], there [were] no fact issues whether

[defendant] desired to interfere with the probable contractual relationship or that [defendant] believed interference was substantially certain to result from its actions." *Id.* Here, though SSF likely knew, or at least assumed, that Calcon was working with prospective buyers, there is no allegation that SSF knew that there were prospective contractual relationships between Calcon and the borrowers who ultimately requested transfer to SSF. *See* Dkt. 16, at 5.

Further, Calcon's allegation that SSF "agreed to utilize Freda Maynard as a single appraiser to attract more business from" the retailers suggests that the borrowers' transfer to SSF was an incidental result of SSF's efforts to attract more business, not that SSF intentionally interfered with the specific business relationships Calcon identifies in its complaint. *Id.* at 3; *see Bradford*, 48 S.W.3d at 757. Even if SSF knew Calcon's potential borrowers may be motivated to transfer their applications to SSF once it agreed to use Maynard, that is not enough to allege intentional interference. *See Bradford*, 48 S.W.3d at 757; *see also Wal-Mart Stores v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) ("Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations, and we disapprove of cases that suggest the contrary."). Calcon also adds in its response that the retailers, "together with Defendant, convinced borrowers to transfer their loan applications to Defendant." Dkt. 18, at 2. Notwithstanding the fact that this allegation does not appear on the face of Calcon's complaint, the conclusory statement that SSF worked with the retailers to poach

Calcon's borrowers is still not enough to allege that SSF had knowledge of those specific borrowers until they requested transfer of their accounts to SSF.

Nor does Calcon allege that SSF had knowledge of facts that would lead a reasonable person to conclude that the prospective business relationships existed. *See Hill*, 964 S.W.2d at 123. Purporting to quote from its complaint, Calcon states in its response to the motion to dismiss that SSF knew its interference was certain or substantially certain to occur because SSF is Calcon's competitor and an experienced lender. Dkt. 18, at 5. To the extent these allegations were included in Calcon's complaint at all, they do not demonstrate that SSF could conclude that Calcon had business relationships with the borrowers Calcon identifies. Rather, the statement suggests only that SSF knew it was possible some of Calcon's borrowers would transfer their applications to SSF once it agreed to use Maynard. In other words, the transfer was merely an "incidental result" of SSF's business decision. *See Bradford*, 48 S.W.3d at 257.

Because Calcon fails to support its statements as to SSF's intent with anything more that conclusory statements, the undersigned will recommend that the District Judge grant SSF's motion to dismiss.

## IV.    REQUEST TO AMEND

"Ordinarily, Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings." *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013). "Where a court's permission for leave to amend is required because the amendment is not a matter of course, leave to amend 'shall be freely given when

justice so requires.'" *Id.* (citing *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). "This is a lenient standard, but it does not apply if an amendment would require the modification of a previously entered scheduling order." *Id.* "Instead, Rule 16(b) governs the amendment of pleadings 'after a scheduling order's deadline to amend has expired.'" *Filgueira*, 734 F.3d at 422 (citing *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)). Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). "Only upon the movant's demonstration of good cause to modify the schedule order [under Rule 16(b)] will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S & W Enters.*, 315 F.3d at 536.

The good cause standard under Rule 16(b) requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 535 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). Further, the Fifth Circuit has adopted a four-factor analysis to address good cause as to "untimely motions to amend pleadings." *Id.* at 536. In determining whether good cause is shown, the Court considers "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Filgueira*, 734 F.3d at 422 (citing *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012)).

8

Under the parties' scheduling order, the deadline to amend pleadings passed on July 30, 2025. Dkt. 11, at 1. Calcon has already amended its complaint once out of time. *See* Dkt. 16 (filed September 4, 2025). The operative complaint is Calcon's third. *See* Dkts. 1-1 (state-court complaint for unfair competition and unfair trade practices); 13 (amended complaint raising tortious interference with business relations); 16. Calcon offers no explanation for its failure to timely move for leave to amend and does not address the importance of the amendment, potential prejudice, or the availability of a continuance to cure any prejudice. *See* Dkt. 18, at 6; *Filgueira*, 734 F.3d at 422. Nor does Calcon inform the Court of any facts it would add to its complaint. *See id.*

Where a plaintiff makes cursory mention of a request to amend without identifying any facts it would add to cure the deficiencies, the district court may deny the motion. *Garrett v. Celanese Corp.*, 102 F. App'x 387, 387 (5th Cir. 2004) (citing *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002)). In light of Calcon's failure to apprise the Court of any new facts it would add to the amended complaint, Calcon's multiple prior attempts to amend, the lack of explanation for Calcon's failure to timely amend, the Court's inability to determine the importance of the amendment, and the potential prejudice to SSF in allowing amendment almost one year after the deadline to amend pleadings despite any availability of a continuance, the undersigned recommends that the District Judge deny Calcon's request to amend.

9

## V.      RECOMMENDATION

In accordance with the discussion above, the undersigned **RECOMMENDS** that the District Judge **GRANT** SSF's motion to dismiss, Dkt. 17, and **DISMISS** this case **WITH PREJUDICE**.

The undersigned **FURTHER RECOMMENDS** that the District Judge **DENY** Calcon's request to amend.

The referral of this case to the undersigned should now be canceled.

## VI.      WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED May 15, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE